IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM O. MAYBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-CV-533-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff William O. Mayberry seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i) and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 9).

**Introduction**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of his or her impairment and the severity of the impairment during the time of the alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## Issues

Plaintiff identifies three issues of error, stating that the ALJ failed to perform: (1) a proper step 5 analysis; (2) a proper evaluation of the treating physician's opinions; and (3) a proper credibility determination. (Dkt. # 16 at 2).

## Analysis

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); and Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases,"

but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

First, plaintiff contends that the ALJ's residual functional capacity ("RFC") assessment was in error. Plaintiff focuses on the ALJ's hypothetical and his subsequent finding that plaintiff had the RFC for "the sedentary level of exertion, with additional nonexertional limitations." Id. at 3-4. Specifically, plaintiff asserts that the ALJ failed to "include all of the impairments borne out by the evidentiary record, even the nonsevere impairments." Plaintiff cites Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995), which reiterated the established rule that a hypothetical "must include all (and only) those impairments borne out by the evidentiary record." Id. Failure to do so is reversible error. Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006).

Plaintiff asserts that the ALJ improperly ignored the finding of two CE's that plaintiff "had diminished and painful range of motion of the spine[,] . . . a physical RFC signed by the Social Security Administration's medical consultant . . . that limits [plaintiff] to only occasional stooping," and a CE assessment that plaintiff's grip strength was "4/5." (Dkt. # 16 at 3). In addition, plaintiff points to his own testimony that his motor skills have deteriorated and that he told his treating physician that he has decreased sensation in his hands. Id. Finally, plaintiff claims that the ALJ did not properly consider the following nonsevere impairments: "hypertension; history of rectal bleeding of unclear etiology; and dry mouth from medications." Id. at 3-4.

Defendant argues that plaintiff "failed to show that any of the above impact his ability to perform sedentary work. When a claimant does not relate his limitations to an inability to perform a particular work requirement, then the matter is not at issue." Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 6 (1st Cir. 1991). Although defendant is correct that

3

plaintiff failed to relate his limitations to an inability to perform a particular work requirement, the applicability of Santiago is questionable, since it dealt with a claimant's ability to perform prior work, which is step 4 of the analysis, not with an ALJ's alleged failure to account for all of a claimant's impairments, which is at issue here. Id. at 6-7 ("The record supports the conclusion that the claimant failed to present evidence showing the 'practical consequences' of her conditions on the requirements of her prior work."). Defendant also argues that plaintiff has failed to "point[] to any medical evidence which would support his allegations of work-related limitations." (Dkt. # 17 at 4). This argument goes to the issue raised by plaintiff, whether there is any objective medical evidence of an impairment that was not considered by the ALJ. If supported by the record, this argument would defeat plaintiff's appeal on this issue. Evans v. Chater, 55 F.3d at 532 (a hypothetical "must include all (and only) those impairments borne out by the evidentiary record.") (emphasis added).

The ALJ found that plaintiff has the following severe impairments: obesity, diabetes, mellitus, depression, and pain disorder. (Dkt. # 14 at 19). The ALJ also acknowledged that plaintiff "alleges hypertension, history of rectal bleeding of unclear etiology, and dry mouth from medications" but that the record does not reveal any laboratory signs, symptoms or laboratory findings of an impairment which would impose more than a minimal limitation on the claimant's ability to perform basic work activities and [these impairments are] therefore considered . . . nonsevere. . . .." Id. at 19-20.

Plaintiff claims the ALJ ignored impairments evidenced in the findings of two CE's, that of Dr. Gary R. Lee (dkt. # 14-1 at 40) and that of Dr. William O. Mayberry (dkt. # 14-1 at 185-89). According to plaintiff, the ALJ ignored findings from these CE's that plaintiff "had diminished and painful range of motion of the spine." As to Dr. Lee, this claim has no merit.

The ALJ specifically discussed Dr. Lee's findings. (Dkt. #14 at 22). Moreover, Dr. Lee did not reach the conclusion alleged by plaintiff. Id. Although Dr. Lee found that plaintiff had pain of his cervical spine, and tenderness and "slight" diminished range of motion of his lumbar spine, Dr. Lee also found: (1) with respect to plaintiff's cervical spine, "no overt tenderness" and only "slight restriction of motion"; (2) with respect to plaintiff's thoracic spine, "normal range of motion," and "no tenderness, spasm, scoliosis or rigidity"; and (3) with respect to plaintiff's lumbar spine, "no spasm, scolosis or rigidity." (Dkt. # 14-1 at 40).

Dr. Mayberry, on the other hand, completed two rating forms, noting in both a decrease in plaintiff's range of motion in his lumbosacral spine and in numerous areas of his back. (Dkt. # 14-1 at 81-83). Plaintiff is correct that the ALJ failed to mention the forms completed by Dr. Mayberry. However, Dr. Mayberry had only limited contact with plaintiff and was not his treating physician. "[F]indings of a nontreating physician based upon limited contact and examination are of suspect reliability." Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). In addition, Dr. Mayberry provided no explanation for the ratings included in the forms, even though the directions specifically asked him to "[p]rovide a complete description of all affected joints in [his] narrative summary." Id. This failure further limits the value of Dr. Mayberry's forms. See O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir. 1983) (". . . evaluation forms [consisting solely of checked boxes], standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence). For example, even were the ALJ to consider and accept as true the "limitations" noted on the forms, the ALJ had no way of determining what those limitations meant or whether they would limit plaintiff's ability to work. Plaintiff also fails entirely to identify any other objective medical evidence that supports, or explains, the limitations found in Dr. Mayberry's forms. In addition, an ALJ is not required to

5

discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir.1996). "[W]here, as here, the ALJ's decision states that he considered all of the evidence, 'our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.'" (citing Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005). For the foregoing reasons, plaintiff's argument is rejected.

Plaintiff next points to his own testimony that his motor skills have deteriorated and that he told his treating physician that he has decreased sensation in his hands. Id. The ALJ specifically mentioned and considered plaintiff's testimony regarding his motor skills. (Dkt. # 14 at 22). Similarly, plaintiff claims that the ALJ did not properly consider the following nonsevere impairments: "hypertension; history of rectal bleeding of unclear etiology; and dry mouth from medications." Again, the ALJ specifically mentioned these impairments and, in formulating plaintiff's RFC, stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Dkt. # 14 at 21). Thus, these arguments are rejected.

Second, plaintiff asserts that the "ALJ failed to perform a proper analysis of the treating physician's [Dr. LaFromboise's] opinions." (Dkt. # 16 at 4). Plaintiff relies on two arguments: (1) the ALJ failed to conduct the required treating physician analysis under Goatcher v. U.S. Dep't Health & Human Servs., 52 F.3d. 288, 290 (10th Cir. 1995); and (2) the ALJ failed to accept the conclusion of plaintiff's treating physician that he is "unable to perform the duties required of a job" and his "current state is of permanent disability." (Dkt. # 16 at 4-6).

The Goatcher factors are:

> (1) The length of treatment, the treatment relationship, and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree by which the opinion is supported by relevant evidence; (4)

6

consistency between the opinion and the record as a whole; (5) the specialty of the author of the opinion; (6) and any other factors noted by the ALJ which support or detract from the opinion.

Id. The ALJ specifically identified these factors and then explained his decision to give "little weight" to the opinion of Dr. LaFromboise as follows:

> The Administrative Law Judge give little weight to the opinion of Dr. LaFromboise, the claimant's consulting physician at Assoaciated Centers for Therapy, as the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. The course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. While the physician does have a treating relationship with the claimant, the treatment history is quite brief, when considering the claimant's alleged onset date of February 2, 2002. Dr. LaFromboise has provided treatment and medication management through Associate Center for Therapy once a month since January 17, 2008 (Exhibits 13F and 14F). Although Dr. LaFromboise stated that it was her medical opinion the claimant was disabled, it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations.

(Dkt. # 14 at 26). It is clear that the ALJ addressed the length of plaintiff's treatment under Dr. LaFromboise, noting that treatment did not begin until almost six years after the alleged onset date and two and a half years after plaintiff filed for benefits. The ALJ noted that the treatment had been ongoing for only eight months (at a rate of once per month) at the time of the hearing. The ALJ noted that the course of treatment provided was not "consistent with what one would expect if the [plaintiff] were truly disabled. . .." In addressing the nature and extent of the treating relationship, the ALJ cited Dr. LaFromboise's treatment notes (which covered less than seven months) and medical records (which encompassed only one month). The ALJ noted that Dr. LaFromboise's opinion was supported primarily by plaintiff's subjective comments, as opposed to objective medical evidence, and that his opinion was not consistent with the record as a whole (specifically citing the opinions of the consultative examiners and medical consultants of

7

the State Disability Determination Services). In addition, the ALJ took a full half page, in another portion of his decision, to analyze Dr. LaFromboise's records, noting that these records indicated that "[o]n June 26, 2006 [plaintiff's] behavior was more sociable and [he] made good eye contact. Dr. LaFromboise reported [plaintiff] seemed grateful that he was coming to therapy and he realized his depression was clearing up." (Dkt. # 14 at 24). Finally, the ALJ noted that the record does not establish that Dr. LaFromboise, in opining that plaintiff was disabled, knew or "was familiar with the definition of 'disabled' contained in the Social Security Act and regulations." Id. The Court concludes that the ALJ conducted a Goatcher analysis that was supported by substantial evidence, and the ALJ explained why he did not simply accept Dr. LaFromboise's conclusion that plaintiff is disabled. Because it is only the role of the Court to determine whether or not substantial evidence supports the ALJ's analysis, as is the case here, this argument is rejected.

Finally, plaintiff argues that the ALJ failed to perform a proper credibility determination. Plaintiff generally asserts that the ALJ improperly relied on boilerplate language and did not specifically address the reasons for his credibility findings. (Dkt. # 16 at 6-9). The Court disagrees. The ALJ explained his credibility findings in detail, using over four paragraphs. (Dkt. # 14 at 25). The ALJ noted that plaintiff's daily activities are not limited "to the extent one would expect, given the complaints of disabling symptoms and limitations." Id. The ALJ specifically mentioned that plaintiff "has reported the following activities of caring for his own personal needs, fixing meals for himself, performing the household chores for himself, mowing the lawn and visiting with close friends." Id. Plaintiff does not dispute that he engages in these activities. Rather, he claims that "[t]he ALJ implied that [he] perform[s] his ADLs eight hours a day." (Dkt. # 16 at 6). This claim is simply untrue. The ALJ was merely noting that plaintiff

engages in a number of activities that are inconsistent with the claimed severity of plaintiff's impairments.

The ALJ also cited to the fact that the alleged side effects from plaintiff's medications were not corroborated by any medical records, "such as office treatment notes." (Dkt. # 14 at 25). The ALJ noted that plaintiff had recently sought mental health treatment but that "[t]he record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurological abnormalities which would establish the existence of a pattern of pain of such severity as to prevent [plaintiff] from engaging in any work on a sustained basis." Id. The ALJ noted that plaintiff's work history raised questions regarding whether or not plaintiff's unemployment was "actually due to medical impairments." Id. The ALJ's analysis, which is not even fully detailed here, is more than sufficient to support his credibility decision.

## **Conclusion**

Based on the foregoing, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 10th day of March, 2011.

_____
T. Lane Wilson
United States Magistrate Judge